**DIERKS LUMBER & COAL CO. v. MABRY.**

**No. 12214.**

Circuit Court of Appeals, Eighth Circuit.

July 8, 1942.

Charles E. Whittaker, of Kansas City, Mo. (Scott Wood and E. H. Wootton, both of Hot Springs, Ark., and Watson, Ess, Groner, Barnett & Whittaker, of Kansas City, Mo., on the brief), for appellant.

Lee Cazort, Jr., of Little Rock, Ark. (Osro Cobb, of Little Rock, Ark., on the brief), for appellee.

Before STONE, SANBORN, and THOMAS, Circuit Judges.

SANBORN, Circuit Judge.

The appellant (defendant) has challenged the validity of a judgment for the appellee (plaintiff) entered upon the verdict of a jury in an action to recover damages for personal injuries alleged to have been sustained by the plaintiff as the result of the negligence of the defendant. The defendant asserts that the court erred in denying its motion for a directed verdict and its subsequent motion for judgment notwithstanding the verdict. The only question for consideration is whether, as a matter of law, the defendant was entitled to a judgment in its favor.

In her complaint the plaintiff alleged that E. W. Mabry, her husband, was, in July, 1940, an employee of the defendant; that she and her husband lived at Blakely, Arkansas, in a house owned by, and rented from, the defendant in a "logging front community entirely owned and controlled by the defendant;" that on or about July 14, 1940, E. W. Mabry was notified by his foreman, the agent of defendant, that Mabry was being transferred to a job at a remote point in the woods and that it would be necessary for him and his family to vacate the house which they were occupying, the defendant requiring Mabry to live at or near the new work in a trailer furnished by the defendant; that Mabry was ordered to begin the new work on Monday, July 15, 1940, and to move out of the house, which defendant had rented and promised to another employee who was to occupy it on that day; that the foreman directed Mabry to use a certain truck of defendant in removing his belongings from the house to the trailer house that he was to occupy at the logging front, or to any other place for safekeeping; that on July 14, 1940 (which was a Sunday), pursuant to the instructions which Mabry had received from his foreman, Mabry and the plaintiff loaded part of their belongings into the defendant's truck and undertook to transport them to a point about thirty miles from Blakely, for storage; that Mabry, while operating the truck upon a highway and while descending a hill, lost control of the truck, due to the absence of means for reducing its speed, and ran it into the "bank of the highway," injuring the plaintiff, who was riding in the truck; that the truck furnished to Mabry by the defendant was to its knowledge in a defective and dangerous condition, because it was without proper brakes and had a worn and defective transmission, which made it impossible for the driver to shift gears and check the speed of the truck in that way; and that the accident and the plaintiff's injuries were due to the negligence of the defendant in furnishing Mabry with the dangerously defective truck, in directing him to use it, and in not warning him of the dangers involved in its use. It is to be noted that the negligence charged is that of the defendant, and not that of Mabry, its employee.

In its answer the defendant admitted that it was the owner of the truck referred to by the plaintiff. The defendant alleged that a short time prior to July 14, 1940, Mabry requested it to loan him the truck to transport his household effects from Blakely, Arkansas, to the home of Mabry's brother in Aly, Arkansas, and that the defendant consented that Mabry might use the truck for that purpose without charge; that defendant "had no knowledge that the plaintiff would or did, if in fact she did, ride or attempt to ride on said truck while the same was so loaned to E. W. Mabry, for the purpose of moving his household furnishings as aforesaid," and that if the plaintiff was riding in the truck she was

either a trespasser or a guest, and was not entitled to recover against defendant. The defendant denied that the truck was defective in any respect known to it, and alleged that the condition of the truck was as well known to Mabry as to the defendant. It denied that it was negligent.

Much of the evidence is not in substantial conflict. The accident happened, as alleged, while the plaintiff and her husband were taking part of their household goods to Aly, Arkansas, to be stored. They were using a truck of the defendant which had no usable brakes, and the gears of which could not always be shifted. The accident was due to the defective condition of the truck, which was unfit for the purpose for which it was being used. When Mabry took the truck he knew it was without usable brakes. Some four or five days before the accident Mabry knew that the truck had "hung in gear," and had heard his foreman say that he (the foreman) must have the truck repaired. The evidence does not show with certainty that on the day of the accident Mabry knew that the transmission had not been repaired, but there is no basis in the evidence for an inference that in using the truck he placed any reliance upon repairs having been made. The plaintiff, however, knew nothing about the defective condition of the truck.

The plaintiff's evidence tended to show that Mabry had been directed to take the job of grease man, which required that he move to a small portable house at the point where greasing was done, and which, at the time of the accident, was about a quarter of a mile from the house which he was occupying; that he could not get all of his household effects into the portable house; that the defendant desired to put somebody into the house in which Mabry and the plaintiff were living; that Mabry advised his foreman that he (Mabry) could store part of his furniture at Aly if he had the means of transporting it, and the foreman told him to use the defective truck; that the plaintiff helped Mabry load the furniture into the truck and accompanied him for the purpose of helping unload it; and that it was the custom of the defendant to permit its employees to use its trucks in moving their effects and their families from one point to another when a change of work required it.

The defendant's evidence was to the effect that Mabry had voluntarily arranged with another employee to exchange jobs; that it was Mabry's own idea to store part of his furniture at Aly; that he was never directed to store it there or to give up the defendant's house; that, while he was given permission to use the truck, he used it for his own accommodation and purposes; and that, so far as the defendant's foreman had authorized its use, it was for moving furniture alone.

■ We cannot concern ourselves with the truthfulness of the plaintiff's testimony or the weight of her evidence. Booth v. Gilbert, 8 Cir., 79 F.2d 790, 792, 793; Elzig v. Gudwangen, 8 Cir., 91 F.2d 434, 444. We must assume as established all the facts that the evidence supporting the plaintiff's claims reasonably tends to establish, and draw in her favor all inferences fairly deducible from such facts. Gunning v. Cooley, 281 U.S. 90, 94, 50 S. Ct. 231, 74 L.Ed. 720; Lumbra v. United States, 290 U.S. 551, 553, 54 S.Ct. 272, 78 L.Ed. 492; Svenson v. Mutual Life Ins. Co., 8 Cir., 87 F.2d 441, 442; Elzig v. Gudwangen, supra, 91 F.2d at page 439; Egan Chevrolet Co. v. Bruner, 8 Cir., 102 F.2d 373, 377, 122 A.L.R. 987. So far as this Court is concerned, it must assume that Mabry, an employee of the defendant, had been directed by it to change his job and his location, to vacate the defendant's house which he was occupying, and, in effect, to remove a part of his furniture to Aly, Arkansas, using the defective truck in question for that purpose. It is a fair inference that the authority granted to Mabry to move his furniture included permission to have his wife assist him in loading and unloading their household goods upon and from the truck, which required, or at least permitted, her to accompany him on the trip. She might reasonably have been expected to accompany Mabry on a journey involving the disposition of their household goods. She was riding with her husband in violation of no rule or instruction of the defendant, and had no knowledge that the truck was unfit for use.

■ The defendant argues that Mabry was a gratuitous bailee, fully aware of the defective condition of the truck; that there was no breach of duty toward him; and that the plaintiff stands in no better position. This argument is fallacious, under the facts of this case, for two reasons: (1) That Mabry was not using the truck exclusively for his own benefit, and (2) that even a gratuitous bailor of a motor vehicle may not furnish the bailee with an

unsafe and unmanageable vehicle for a purpose which will endanger life and limb. Jenkins v. Spitler, 120 W.Va. 514, 199 S.E. 368; Vaughn v. Millington Motor Co., 160 Tenn. 197, 22 S.W.2d 226; Opple v. Ray, 208 Ind. 450, 195 N.E. 81. An owner of a motor vehicle who loans it to another will be liable to a third person for injuries resulting from the known incompetence of the person to whom it was loaned, to safely operate it (Chaney v. Duncan, 194 Ark. 1076, 110 S.W.2d 21; 42 C.J. 1078, § 836), or from the known dangerous and defective condition of the vehicle. Shrigley v. Pierson, 189 Ark. 386, 72 S.W.2d 541; Hudson v. Moonier, 8 Cir., 94 F.2d 132, 135; Egan Chevrolet Co. v. Bruner, 8 Cir., supra, 102 F.2d 373, 122 A.L.R. 987; Donovan v. Garvas, 121 Misc. 24, 200 N.Y.S. 253; Tannahill v. Depositors' Oil & Gas Co., 110 Kan. 254, 203 P. 909, 911, 912.

In Jenkins v. Spitler, W.Va., supra, 199 S.E. 368, at page 371, the court said: "Generally, a gratuitous bailor * * *, knowing of a defect in an automobile rendering it unfit for use, is liable for injuries to third persons, who are without fault themselves, proximately resulting from the defect."

In Vaughn v. Millington Motor Co., Tenn.Sup., supra, 22 S.W.2d 226, at page 227, it was said: "It would be little, if any, short of criminal conduct to operate an automobile or auto-truck without proper devices to control its movements. Hence the rule that if the bailor knows or by reasonable diligence could know of defects in devices intended to control them, an obligation rests upon him not to let the machine without correcting the defect, or without notifying the bailee and contracting with him to make the machine safe before using it in public.

In Opple v. Ray, Ind.Sup., supra, 195 N.E. 81, at page 83, the court said: "Where a [gratuitous] bailor intrusts a dangerous article [car without lights] to a bailee, knowing that it will be used in such a manner as to endanger persons and property, he is chargeable with negligence and answerable in damages for any injury which, by the exercise of ordinary prudence, he could have foreseen."

In Egan Chevrolet Co. v. Bruner, supra, 102 F.2d 373, at page 376, it was said by this Court: "One who permits a truck with a dangerously defective steering mechanism to be used upon the public highways, not only has reason to anticipate that it will cause an accident, but may be almost certain that it will do so. 'In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty.' MacPherson v. Buick Motor Co., supra [217 N.Y. 382, 111 N.E. 1050, at page 1053, L.R.A.1916F, 696, at page 699, Ann.Cas.1916C, 440]."

 The defendant was negligent in directing, or permitting, Mabry to use the defective truck for a purpose for which it was known to be dangerous; and defendant's negligence in this regard was the proximate cause of the accident and the plaintiff's injuries. The accident was one which might reasonably have been anticipated.

The judgment is affirmed.