HAZEL HOLLEN, *Admx., Etc. v.* MOORE M. REYNOLDS *et al.*

(No. 9131)

Submitted April 30, 1941.   Decided May 27, 1941.

*Wyatt & Randolph, E. A. Bartlett* and *J. D. Jennings,* for plaintiffs in error.

*Waugh & Waugh,* for defendant in error.

LOVINS, JUDGE:

Hazel Hollen, administratrix of the estate of Clifton Hollen, deceased, instituted this action in the Circuit Court of Upshur County, against Moore M. Reynolds and William B. Simon, defendants, for the wrongful death of Clifton Hollen, allegedly caused by the negligence of Reynolds' agent, Simon, in operating a truck owned by Reynolds. Judgment was entered against the defendants, upon a jury verdict, for $3,640.00, to which judgment Reynolds was granted a writ of error by this Court.

Reynolds, Sheriff of Harrison County, resided at Clarksburg, West Virginia, and in September, 1939, contracted with Simon to build a barn on his farm, located about six miles north of Clarksburg in the direction of Fairmont, and Simon began work on October 2nd. By the terms of the contract Reynolds furnished the materials

and Simon furnished the labor for a stipulated amount. Simon lived at Hodgesville about twenty miles south of Clarksburg, between Clarksburg and Buckhannon, and while working on the barn lived in the deputy quarters of the county jail in Clarksburg.

It was his custom to make a trip home on week-ends and sometimes during the week, usually in his own automobile. Reynolds owned a small truck, used in transporting Simon and other men from Clarksburg to work on the Reynolds farm, which on occasions was driven to the farm by Simon. At times Simon drove his car to the farm from Clarksburg. On October 17 or 18, 1939, when his car was out of repair, Simon asked and obtained permission from Reynolds to use the truck to go from Clarksburg to his home. On the evening of December 6, 1939, Simon left his car, again out of repair, at the farm, and drove the workmen back to Clarksburg in the truck. Desiring to visit his home that night, he attempted to see Reynolds to get permission to use the truck, but Reynolds was sick and unable to see him. He then asked Earl Falk, a night jailer, for permission to use the truck. When Falk told him he did not have authority to give such permission, Simon, without authority, took the truck and drove to his home. The next morning (December 7, 1939) about six o'clock, starting to return to Clarksburg, Simon backed the truck from his garage, located on Route 20 near Hodgesville, out on the highway, heading the truck toward Clarksburg. When he attempted to go forward, the motor stalled and he saw the lights of decedent's car, approaching in the direction of Clarksburg at a high rate of speed. Hollen apparently sought to get past the truck by going behind it, on the right side of the road, but his car struck a culvert, travelled about thirty feet in a ditch, ran up an embankment, and turned over. Hollen sustained injuries from which he died shortly after being taken to a hospital in Buckhannon, without regaining consciousness.

After plaintiff rested her case, Reynolds moved for a directed verdict, which motion was overruled. After the jury had returned its verdict against both defendants, the

trial court overruled Reynolds' motions for judgment *non obstante verdicto,* and in renewal of the motion for a directed verdict, to set aside the verdict as to him. Exceptions were duly taken to the action of the court in overruling these motions and Reynolds now assigns as error the action of the lower court in overruling the two latter motions, as well as the rulings on several instructions.

In support of the aforementioned motions, Reynolds asserted that plaintiff had failed to show that Simon was acting as his agent, or performing any business in his behalf at the time of the accident. As plaintiff in error, Reynolds asserts that, in regard to the master-servant relationship, two questions arise: (1) Was Simon his agent at the time of the accident; (2) was Simon acting for him and in his behalf at the time of the accident? Defendant in error apparently relies entirely upon the presumption arising from the ownership of the vehicle by Reynolds to establish liability as to him.

Two problems therefore must be considered: *First,* Is Reynolds liable, under the presumption arising from his ownership of the truck, for Simon's negligent acts at the time of the accident; and *Second,* was Simon the agent or employee of Reynolds, acting within the scope of his agency or employment at the time decedent met his death.

"Where, in a personal injury case, the ownership of the automobile which caused the injury is shown, a presumption arises that such automobile was at the time of the injury operated in the service of the owner. This presumption, however, may be rebutted by proof to the contrary." Point 2, Syl., *Malcolm* v. *Service Co.,* 118 W. Va. 637, 191 S. E. 527. This presumption has no probative force, does not shift the burden of proof but is designed only to sustain the burden of proof until evidence is introduced tending to overcome it, and loses entirely its legal force upon the introduction of such evidence. *Jenkins* v. *Spitler,* 120 W. Va. 514, 199 S. E. 368, and authorities cited therein. We believe that Reynolds rebutted the foregoing presumption when he introduced uncontradicted evidence showing that Simon was using the

truck without permission, express or implied, on the business or undertaking of visiting his own family. In the period of slightly over two months that Simon had been engaged in work for Reynolds, he had on only one occasion used the truck in question for a trip to his home at Hodgesville, and that was strictly a permissive use, granted by Reynolds at the request of Simon, in no way connected with the work at the farm, but merely a mission of his own choosing. The second time he used Reynolds' truck for such a journey even the element of permissive use was lacking, for it was not denied that the trip of December 6-7, 1939, was made in the Reynolds' truck without Reynolds' permission to use the same, and without his knowledge. Conceding that Simon was the agent or employee of Reynolds in carrying workmen from Clarksburg to the Reynolds farm, it would be an unwarranted assumption to say that Simon was acting within the scope of his agency or employment at the time of the accident. It is clearly shown by the evidence that the scope of Simon's activities connected with the building of the barn was at the most limited to the area from Clarksburg to the farm. Simon lived in the deputy quarters of the county jail and boarded with Reynolds. He sometimes drove one or more workmen to the farm in Reynolds' truck, and there is evidence in the record to show that on occasion the truck was used to take construction materials from Clarksburg to the place of work. All of this was apparently done pursuant to the agreement. We agree with the contention of plaintiff in error that there is no basis for holding that Simon was engaged in any business, undertaking, or mission for Reynolds, when Simon went to Hodgesville to visit his own home.

The defendant in error argues that it is a jury question, whether Simon was within the scope of his employment or agency at the time of the accident, and that the jury has resolved this question in her favor. She relies on the case of *Meyn* v. *Dulaney-Miller Auto Co.*, 118 W. Va. 545, 191 S. E. 558, 563, quoting from the body of the opinion in that case as follows:

"In *Meyn* v. *Auto Co.*, the Court citing abundant authority in support thereof holds:

'Whether the driver of an automobile using his employer's car to go to and from work is acting within the scope of his employment, is a question of fact for the jury.'

\* \* \*

'Likewise, it is generally a jury question where an employee driving his employer's automobile diverts from his master's business and is involved in an accident upon returning towards the master's business.'

\* \* \*

'We think that under all the circumstances, it was the clear province of the jury to determine whether or not at the time of the accident, Scanlon (the driver) was acting within the scope of his employment.' "

The facts in the *Meyn* case are readily distinguishable from those in the instant case in that the stipulation of record therein states that the agent had the right to use the car in question for his master's business and his own pleasure at any time of the day or night. Here, by stipulation, the parties agreed only that the truck driven by Simon was owned by Reynolds. No other evidence bearing upon the employment of Simon, or his rights and duties thereunder was offered by plaintiff below. Also, there is no factual situation herein lending to an application of the "going to and from work" rule quoted above. This record shows that it was not contemplated that Simon's work for Reynolds should involve travel from Clarksburg to Hodgesville. Simon and Reynolds both testify that during the continuance of the work on the farm, Simon was to, and did, stay in Clarksburg and board with Reynolds. The weekly and sometimes biweekly trips to Hodgesville were made by Simon purely in his own business or pleasure. Likewise, the rule relating to a diversion and return to the master's business does not apply, in our opinion. Simon's activities pur-

suant to his contract or agreement with Reynolds ceased when he reached Clarksburg from the farm the evening before, and did not resume until his return to Clarksburg from the journey for his own business or pleasure. Moreover, the last quoted statement from the *Meyn* case plainly limits the rule therein announced to the facts established by the stipulation and testimony in that case.

We believe that at best, under the factual situation presented herein, plaintiff could only show a permissive use of Reynolds' truck by Simon, for his own business or pleasure. But even where the owner of a vehicle permits his servant or employee to use the same for his own purposes, the master is not liable for the negligent operation thereof. In two cases, recently decided, this Court has clearly stated its conception of the law of this jurisdiction relating to the liability of a master to a third person for a servant's negligent operation of a vehicle owned by the master and operated with the master's permission by the servant for his own business or pleasure. In *Jenkins* v. *Spitler, supra,* where the servant used the vehicle to visit his sick wife, the master was absolved of liability, even though the servant in that case had the right to make sale of the vehicle, if possible, and was incidentally charged with a mission beneficial to the master. Likewise, in *Lacewell* v. *Lampkin,* 123 W. Va. 138, 13 S. E. (2d) 583, where the servant used the vehicle to take two friends to a school picnic, with the master's permission.

Since the liability of Reynolds was sought to be established solely on the theory of the master and servant or agency relationship, and in view of our opinion that the record is insufficient to establish liability as to plaintiff in error on the ground relied upon, the question of the negligent operation of the vehicle becomes moot. Likewise we do not reach consideration of the errors assigned with reference to the giving and refusal of instructions and thus refrain from any expression of opinion thereon, except as to defendant's instruction No. 2, which directed the jury to find for the defendant Reynolds. This instruction should have been given.

We therefore reverse the judgment of the Circuit Court of Upshur County and set aside the verdict of the jury as to the defendant below, Moore M. Reynolds, and award the defendant a new trial.

*Reversed as to Moore M. Reynolds; verdict set aside; new trial awarded.*